**Chester L. LOVE, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 4990.**

Court of Appeals of Alaska.

June 25, 1981.

---

Gregory M. O'Leary, Escondido, Cal., Michael J. Frank, for appellant.

William H. Hawley, Asst. Atty. Gen., Sp. Prosecutions and Appeals, Anchorage, and

Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before COATS and SINGLETON, JJ., and SCHULZ, Superior Court Judge.

### OPINION

COATS, Judge.

Chester Love appeals to this court arguing that the superior court erred in denying his motion to withdraw his guilty plea and in imposing an excessive sentence. We hold that the superior court erred in not letting Love withdraw his guilty plea. Since this decision necessitates vacating Love's sentence, we do not need to decide if the sentence imposed upon Love was excessive.[1]

On January 27, 1979, a criminal complaint was filed charging Chester Love with assault with intent to commit a robbery (former AS 11.15.160),[2] and robbery with a firearm (former AS 11.15.240,[3] AS 11.15.295).[4] Shortly thereafter, the district court determined that Love was indigent and appointed attorney Dan Hensley to represent him. On February 9, 1979, the grand jury indicated Love on the same charges. On February 13, 1979, Love entered a plea of not guilty through Hensley. On March 8, 1979, Hensley filed a motion to withdraw as counsel on the ground that "irreconcilable differences" had arisen between client and counsel. On March 13, 1979, this motion was granted and Albert Simmons was appointed to defend Love. Simmons was then representing Love on a federal charge of aiding and abetting a bank robbery.

1. Love was sentenced to nine years for a violation of AS 11.15.240 (Robbery). This sentence was concurrent to Love's sentence of six years on a federal aiding and abetting a bank robbery conviction. Love's federal conviction was affirmed by the Ninth Circuit Court of Appeals on February 1, 1980.

2. Former AS 11.15.160 reads as follows:

A person who assaults another with intent to kill, or to commit rape or robbery upon the person assaulted, is punishable by imprisonment in the penitentiary for not more than 15 years nor less than one year.

3. Former AS 11.15.240 states:

A person who, by force or violence, or by putting in fear, steals and takes anything of value from the person of another is guilty of robbery, and is punishable by imprisonment in the penitentiary for not more than 15 years nor less than one year.

4. Former AS 11.15.295 provides:

A person who uses or carries a firearm during the commission of a robbery, assault, murder, rape, burglary, or kidnapping is guilty of a felony and upon conviction for a first offense is punishable by imprisonment for not less than 10 years. Upon conviction for a second or subsequent offense in violation of this section, the offender shall be imprisoned for not less than 25 years.

On April 25, 1979, Love entered a plea of guilty to the charge of robbery. The charge of carrying a firearm during the robbery was dismissed by the state. The charge of assault with intent to rob, which arose out of the same set of circumstances as the robbery charge, was also dismissed by the state.

Sentencing was set for May 31, 1979. At that time, during the sentencing proceedings, Love indicated that he was not satisfied with his attorney. The trial judge interpreted Love's remarks as an attempt to withdraw his guilty plea. The judge indicated that he was not willing to allow Love to withdraw his guilty plea, but reset sentencing for the next day to allow Love to read the presentence report. The next day Simmons informed the court that he had been instructed by Love to file a motion asking the court to allow Love to withdraw his plea of guilty and asking the court to allow Simmons to withdraw as counsel. These motions were filed on June 4, 1979. In an affidavit filed with these motions, Simmons indicated that he and Love had disagreed about how to defend the aiding and abetting a bank robbery charge, and that Love had been convicted of the federal charge. Simmons said there had been a "total and complete breakdown in confidence between attorney and client." On June 8 the superior court denied Love's motion to withdraw his guilty plea, but granted the motion for Simmons to withdraw as counsel. Gregory O'Leary was appointed to represent Love. On July 10, 1979, O'Leary filed a motion to withdraw the guilty plea. The motion was accompanied by an affidavit from Love. The state opposed the motion and filed its supporting affidavits. The matter was submitted to the court on the affidavits.

Love made a number of allegations in his affidavit. He alleged that prior to the time he entered his guilty plea, he and Simmons had a complete breakdown of their attorney-client relationship because of disagreements which arose during the trial of the aiding and abetting a bank robbery charge. Love indicated that he felt he would not be properly defended by Simmons. Love said he felt he could not get another attorney because when Simmons was appointed to replace Hensley, he understood the judge who appointed Simmons to say that this was the last time Love could switch attorneys. Love said that he had only a few minutes to discuss the plea of guilty with Simmons, and only pled guilty because he felt he had no choice. Love also indicated that he was told by his attorney that there was an agreement with the prosecutor that he would not receive any time consecutive to the sentence on his federal conviction. The state countered with affidavits from Simmons and James Gould, the state prosecutor assigned to Love's case. Gould indicated that he had not made any sentencing agreements with Love's attorney. The affidavit of Simmons stated that there were no sentence agreements, and that Love had never been advised of any such agreement. However, Simmons did confirm that the attorney-client relationship with Love had completely broken down during the trial of the federal case. Simmons also confirmed that he had little time to confer with Love just before the guilty plea was entered.

The court, without making any findings of fact or conclusions of law, denied Love's motion to withdraw his guilty plea.

The withdrawal of guilty pleas before sentencing is governed by former Criminal Rule 32(d)(2) [present Criminal Rule 11(h)(2)]. That rule reads as follows:

> Once the plea has been accepted by the court and absent a showing that withdrawal is necessary to correct a manifest injustice, a defendant may not withdraw his plea of guilty or nolo contendere as a matter of right. Before sentence, the court may in its discretion allow the defendant to withdraw his plea for any fair and just reason unless the prosecution has been substantially prejudiced by reliance upon the defendant's plea.[5]

---

**5.** This rule is derived from the ABA Project on Standards for Criminal Justice, Pleas of Guilty § 2.1(b) (Approved Draft 1968) and reads as follows:

There are many federal cases discussing withdrawal of guilty pleas. Those cases have been decided under Federal Rule of Criminal Procedure 32(d) which reads as follows:

> A motion to withdraw a plea of guilty or of *nolo contendere* may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea.

The federal cases emphasize that the trial court has a great deal of discretion in determining whether to let a defendant withdraw a guilty plea. For instance, in *United States v. Saft*, 558 F.2d 1073 (2nd Cir. 1977), the court said:

> Our decisions have recognized the large discretion confided to district judges in passing on motions to withdraw pleas of guilty under Fed.R.Crim.P. 32(d), a discretion justified by the much better "feel of the case" possessed by the judge who observed the defendant at the taking of the plea than can be imparted by any appellate transcript. . . .

558 F.2d at 1082 (citations omitted).

The federal cases have also emphasized, however, that:

> In the absence of a showing that withdrawal is necessary to correct a manifest injustice, a defendant may not withdraw his plea of guilty or nolo contendere as a matter of right once the plea has been accepted by the court. Before sentence, the court in its discretion may allow the defendant to withdraw his plea for any fair and just reason unless the prosecution has been substantially prejudiced by reliance upon the defendant's plea.
>
> The ABA Project on Standards for Criminal Justice, Pleas of Guilty (2d ed. 1980) has modified § 2.1(a) which reads as follows:
>
> > After entry of a plea of guilty or nolo contendere and before sentence, the court should allow the defendant to withdraw the plea for any fair and just reason unless the prosecution has been substantially prejudiced by reliance upon the defendant's plea.

Although a criminal defendant does not have an absolute right to withdraw a plea of guilty, a request to withdraw such a plea made before imposition of sentence should be considered carefully and with liberality. The granting of permission to withdraw a guilty plea is within the sound discretion of the court . . . but that discretion is properly exercised only if the decision reached comports with the broad standards of liberality mandated by earlier cases. [citations omitted] [6]

Commentators on the federal rules have emphasized that before sentencing, withdrawal of a guilty plea should be freely allowed unless the prosecution has been substantially prejudiced.[7]

Professor Wright has stated that:

> [I]f leave to withdraw the plea is sought before sentencing, such leave should be freely allowed . . . . It would seem that the sounder view, supported by both the language of the rule and by the reasons for it, would be to allow withdrawal of the plea prior to sentencing unless the prosecution has been substantially prejudiced by reliance upon the defendant's plea. [footnotes omitted].[8]

Professor Moore has stated,

in 2 C. Wright & A. Miller, *Federal Practice and Procedure*, § 538 at 473 (1969):

> This distinction rests upon practical considerations important to the proper administration of justice. Before sentencing, the inconvenience to court and prosecution resulting from a change of plea is ordinarily slight as compared with the public interest in protecting the right of the accused to trial by jury. But if a plea of guilty could be retracted with ease after sentence, the accused might be encouraged to plead guilty to test the weight of potential punishment, and withdraw the plea if the sentence were unexpectedly severe. The result would be to undermine respect for the courts and fritter away the time and painstaking effort devoted to the sentencing process. [footnote omitted].

6. *United States v. Hancock*, 607 F.2d 337 (10th Cir. 1979).

7. The reason for the distinction between a presentence withdrawal and a post sentence withdrawal is explained in *Kadwell v. United States*, 315 F.2d 667, 670 (9th Cir. 1963) quoted

8. 2 C. Wright & A. Miller, *Federal Practice and Procedure*, § 538 at 473–75 (1969). This language is quoted in *Tafoya v. State*, 500 P.2d 247, 252–53 n.1 (Alaska 1972) (dissenting opinion of Rabinowitz J.).

Where a motion to withdraw a guilty plea is made prior to sentencing, the district court possesses broad discretion to grant or deny the motion. The motion should be freely allowed in the interest of justice unless the prosecution will be substantially prejudiced thereby. The liberality found here is a result of a desire to protect defendant's rights to a jury trial. This right has found a favored place in our law. [footnotes omitted].[9]

After reviewing the record as a whole and applying the foregoing standards to Mr. Love's case, we conclude that the motion to withdraw the guilty plea should have been granted. The defendant made a substantial showing that at the time his guilty plea was entered, there had been a breakdown in the attorney-client relationship. It is also clear that Love was able to consult with his attorney for only a short time before entering his plea. The prosecution has not alleged, either at trial or on appeal, that it would have suffered any prejudice by having Love withdraw his plea and go to trial.[10]

Given the great importance which the courts in Alaska have placed upon the defendant's right to a jury trial, we find under the circumstances of this case Love should have been allowed to withdraw his plea and go to trial.[11]

For the foregoing reasons, the judgment of the superior court is REVERSED and the case REMANDED.

SINGLETON, Judge, concurring.

The dissent correctly notes that Love does not assert his innocence in seeking to set aside his plea. The cases are in conflict regarding the necessity for such an assertion where plea withdrawal is sought prior to imposition of sentence. *See* 2 C. Wright & A. Miller, *Federal Practice and Procedure*, § 538, n.63 at 473 (and accompanying text). While the Alaska Supreme Court has held that a civil default should not be set aside for excusable neglect or procedural oversight unless the movant alleges a meritorious defense, *Markland v. City of Fairbanks*, 513 P.2d 658 (Alaska 1973), we do not believe that requirement should apply in criminal cases, at least where withdrawal is sought prior to sentencing. The right to trial serves a purpose in criminal cases additional to that served in civil cases justifying, in our opinion, disparate treatment. While evidence of innocence would support a request to withdraw a plea, its absence should not condemn it. Alaska R.Crim.P. 11(h)(1)(iii).

SCHULZ, Superior Court Judge, dissenting.

It is necessary to set out the facts surrounding Love's guilty plea in further detail in order to understand the error which I perceive in the court's decision.

It seems undisputed that the "deal" which led to Love's guilty plea was struck the morning of the day of trial and communicated to Love by a handwritten note from counsel around the noon hour. Love did not accept the offer at that time, but he had a brief opportunity to discuss it further with counsel before court convened that afternoon.

9. 8A *Moore's Federal Practice*, § 32.07[2] (2nd ed. 1980 Rev.).

10. At oral argument the state indicated that the dismissal of the assault with intent to rob charge and the robbery with a firearm charge was not part of any bargain with the defendant. The defendant was allowed to plead to the robbery charge because that was the proper charge. The state also indicated that if the case were reversed Love would be prosecuted on the robbery charge only. The state has not argued that it is prejudiced because there may be limits on its ability to try Love on the original charges. *Shagloak v. State*, 597 P.2d 142

(Alaska 1979). We therefore do not have to decide whether the state can reinstate the original charges or whether any such limits would constitute substantial prejudice.

11. *Cf. R.L.R. v. State*, 487 P.2d 27 (Alaska 1971); *Baker v. City of Fairbanks*, 471 P.2d 386 (Alaska 1970).

It does not appear in this case that the defendant was trying to "manipulate the criminal justice system." *Barker v. United States*, 579 F.2d 1219, 1222, 1224 (10th Cir. 1978). *See United States v. Hancock*, 607 F.2d 337, 338 (10th Cir. 1979).

The trial judge, after being advised of a possible change of plea, conducted a very careful and complete inquiry of Love to determine that he understood his rights, understood the consequences of his change of plea, and was changing his plea voluntarily.[1]

Love has claimed that the attorney/client relationship had completely broken down, that he did not fully understand his right to go to trial, and that he thought the sentence he would get would be entirely concurrent with the sentence on the federal charge (his trial counsel disagrees).

I have no quarrel with the majority's interpretation of the rule concerning a presentence motion to withdraw a guilty plea, but I am convinced that "fair and just reason" means at least a reason, and I fail to perceive one here.

First, Judge Rowland conducted as complete and fair a change of plea proceedings as can be imagined. The judge was sensitive to Love's position throughout, and was careful in the extreme to make sure that Love understood all of his rights, giving Love every opportunity to explain his understanding of the "deal." Love never mentioned concurrent sentences.

Love's position is that he did not fully understand his right to have a trial, but we should bear in mind that Love had that right explained to him thoroughly by the trial judge, and he had only just recently finished a federal conspiracy trial.

Love states that he thought he had a deal for concurrent sentences,[2] but we should bear in mind that that is totally unsupported and, in fact, contradicted by everything else in the record, including the fact that Love never mentioned it to the trial judge at the time he entered his plea, although he was given ample opportunity to do so by the trial judge.

When Love tells us that he changed his plea because he could no longer rely on his attorney to give him a good defense, we need to remember that he did not, and never has, controverted even one statement in the state's review of the evidence in support of the charge at the time Love entered his plea. And the record is devoid of any evidence of pressure on Love to agree to facts that were not true or to waive rights against his will.

In short, while it appears undisputed that Love and his attorney had suffered a complete breakdown of the attorney/client relationship, there appears no connection between that breakdown and Love's decision to plead guilty. He made that decision himself after being fully and completely advised of all of his rights by Judge Rowland. I do not believe that we should allow this admittedly articulate and intelligent young man to manipulate us so easily.

Having concluded that the order denying the motion to withdraw the plea should be affirmed, I would also affirm the sentence. The trial judge gave careful consideration to the *Chaney*[3] goals, and I cannot say that his balancing of those goals in this case was clearly mistaken.

1. As the majority points out, the plea was to a charge of robbery, reduced from robbery while armed. In addition, the state advised the court that it would not "waste the court's time" in pursuing an additional assault with intent to commit robbery count. All of this, however, was not a plea bargain or charge bargain. The state had reviewed the facts and Love's background and concluded that "simple" robbery was the proper charge. The facts outlined in the presentence report and by the state at the time of the plea show that Love used a firearm in committing the robbery and, in fact, struck one of the victims with the gun. These facts were not contested by Love. In addition to the employees who were present, there were also a number of customers in the store. The potential for harm was severe. The state's position in the trial court, that "simple" robbery was the proper charge, flies in the face of facts which Love never contested.

What this case demonstrates is a not very well disguised plea bargain with none of the protections of Alaska R.Crim.P. 11.

2. The sentence, in fact, was concurrent. What Love is apparently saying is that he was not going to have to serve any time in addition to the time on the federal conviction.

3. *State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970).