**Van W. TRAVELSTEAD, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–114.**

Court of Appeals of Alaska.

Oct. 5, 1984.

---

Lawrence Z. Ostrovsky, Birch, Horton, Bittner, Pestinger & Anderson, Fairbanks, for appellant.

Cynthia M. Hora, Asst. Atty. Gen., Anchorage, Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J. and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

Van Travelstead was convicted, based upon his plea of *nolo contendere*, of attempted murder in the first degree, AS 11.41.100 and AS 11.31.100. Travelstead appeals, arguing that the charges against him should be dismissed because he was allegedly deprived of his right to a speedy sentencing, that the trial court erred in not letting him withdraw his *nolo contendere* plea, and that his sentence is excessive. We affirm.

## FACTUAL BACKGROUND

During the latter part of August and in September of 1983 Van Travelstead, accompanied by his wife Armelda, committed several crimes near the Anchorage area. (Travelstead ultimately entered pleas to two counts of robbery in the first degree, three counts of burglary in the first degree, and kidnapping). On September 23, 1982, near Big Lake the Travelsteads kidnapped Kevin Engebretson and stole his truck. They drove up the Parks Highway toward Fairbanks with Engebretson and ultimately tied him to a tree by the side of the road. Engebretson managed to free himself and obtained a ride into Nenana where he contacted the Nenana Chief of Police, Wayne Walters. Chief Walters and Engebretson located Engebretson's stolen truck which was still being driven by the Travelsteads toward Fairbanks. Chief

Walters followed the truck and contacted the Alaska State Troopers, who set up a roadblock on the highway. When the truck approached the roadblock, Armelda Travelstead, who was driving, attempted to drive around the roadblock. The troopers shot at the truck to disable it and succeeded in shooting the tires and disabling the engine. After Van Travelstead fired a rifle from the truck window, Trooper Arrants managed to get to the side of the truck and grabbed the rifle. As Arrants and Travelstead were fighting over the weapon Chief Walters entered the driver's side of the vehicle. Armelda was lying down on the front seat. By this time Trooper Arrants had gotten control of the rifle and had retreated, but Van Travelstead had picked up a revolver. Chief Walters lunged at Van Travelstead, and Travelstead fired the pistol, injuring Chief Walters' hand. Chief Walters struck Travelstead with a flashlight and Travelstead fired another shot which went near Chief Walters' head but did not strike him. Chief Walters again struck Travelstead with the flashlight, and Travelstead fired a third shot which struck Chief Walters in the chest. Fortunately, Chief Walters was wearing a protective vest and was not critically injured by this shot. Chief Walters backed out of the cab, and ultimately Travelstead surrendered.

Judge S.J. Buckalew sentenced Van Travelstead to a composite sentence of forty-four years for the kidnapping of Kevin Engebretson and for the burglary and robbery charges. Travelstead appealed that sentence and we affirmed in a memorandum order and judgment. The current attempted murder offense arises out of Travelstead's assault on Chief Walters. Judge Gerald Van Hoomissen sentenced Travelstead to twenty years with five years suspended on that charge and imposed that sentence consecutively to the sentence formerly imposed by Judge Buckalew.

## SPEEDY SENTENCING

Travelstead entered his plea of *nolo contendere* to the attempted murder charge on January 11, 1983. Sentencing was set, without objection, for April 18, 1983. On April 11, 1983, Travelstead moved to continue the sentencing to a date between May 31, 1983, and June 10, 1983. This motion was based on his desire to have a psychiatric evaluation completed before sentencing. The state filed non-opposition to continuing the sentence to a date after June 13, 1983. Sentencing was reset for June 16, 1983. On June 13, 1983, the state moved to continue the sentencing from June 16, 1983, to August 19, 1983. Travelstead's attorney at first indicated no opposition, based apparently on his understanding that the presentence report would not be complete until that time. However, when the attorney was contacted by the superior court law clerk to find out whether there was any opposition to continuing the sentencing proceeding, he was told by the law clerk that the presentence report would be available by July 1, 1983. He was also told that Judge Van Hoomissen wanted the hearing set for August 19, 1983, because the judge felt that the attempted murder charge was the most serious charge, and he wanted the sentencing to take place on that charge after the sentencing took place on the other charges. On hearing the reason for the continuance, Van Travelstead objected to continuing the sentencing and filed a demand for prompt sentencing on June 23, 1983. Judge Van Hoomissen continued the sentencing hearing until August 19, 1983. Travelstead argues that he was deprived of his right to a speedy sentencing and argues that his conviction should be overturned and the indictment against him should be dismissed.

■ There is no question that Travelstead had a right to a speedy sentencing. *Gonzales v. State*, 582 P.2d 630, 632–33 (Alaska 1978). The amount of delay involved in Travelstead's case, however, is nowhere near the thirty-one month delay in sentencing which occurred in the *Gonzales* case.[1] It is also important to note that a

---

1. *See also Rutherford v. State*, 486 P.2d 946, 947–52 (Alaska 1971) (interpreting speedy trial

guarantee of Alaska Constitution and holding prejudice to defendant presumed where delay of

major reason for delay was Travelstead's request for a continuance to have a psychiatric evaluation. Apparently the psychiatric report was not ready to be mailed until June 16, 1983, and the person writing the presentence report wanted to consider the psychiatric report in the presentence report. The psychiatric report was filed with the trial court on June 22, 1983. The presentence report was filed on August 2, 1983. Even assuming that the presentence report could have been completed earlier had the court set an earlier sentencing date, it is clear that little time was wasted between when the psychiatric report was filed on June 22, 1983 and the sentencing on August 19, 1983. This is true when we consider the fact that the author of the presentence report needed some time to consider the psychiatric report and the fact that the parties needed a reasonable time to prepare for sentencing after they received the presentence report. We conclude that Travelstead's right to a speedy sentencing was not violated.

### ATTEMPT TO WITHDRAW PLEA

■ On August 18, 1983, the day before his sentencing hearing, Travelstead filed a motion asking to withdraw his *nolo contendere* plea. Travelstead filed an affidavit claiming that before he entered his *nolo contendere* plea on January 11, 1983, the attorney who represented him at that time pressured him into pleading *nolo contendere*. In addition, he claimed in the motion that his plea was not properly entered because when he entered his plea the court did not inform him of his right against self-incrimination. Travelstead also indicated that he wished to defend the charge against him on the ground that he was not guilty of attempted murder because he never intended to kill Chief Walters. Travelstead indicated that he had been interviewed by a psychiatrist, Dr. Ronald Ohlson. After reading Dr. Ohlson's report, Travelstead concluded that he could defend on the ground that he did not intend to kill Chief Walters when he shot at him, but

only acted reflexively. Judge Van Hoomissen denied Travelstead's motion to withdraw his plea.

Withdrawal of a guilty or *nolo contendere* plea is governed by Alaska R.Crim.P. 11(h) which provides in pertinent part:

Once the plea has been accepted by the court and absent a showing that withdrawal is necessary to correct a manifest injustice, a defendant may not withdraw a plea of guilty or nolo contendere as a matter of right. Before sentence, the court in its discretion may allow the defendant to withdraw a plea for any fair and just reason unless the prosecution has been substantially prejudiced by reliance upon the defendant's plea.

Alaska R.Crim.P. 11(h)(2).

In *Love v. State*, 630 P.2d 21 (Alaska App.1981), we emphasized that where a motion to withdraw a plea was made before sentencing, the motion to withdraw the plea should be looked at with liberality if the prosecution would not be prejudiced by the withdrawal of the plea. However, we also noted that the trial court had substantial discretion to grant or deny a motion and that the defendant must show a "fair and just reason" to withdraw the plea. In *Love*, the defendant started attempting to withdraw his plea a little over a month after he had entered the plea. The defendant "made a substantial showing that at the time his guilty plea was entered, there had been a breakdown in the attorney-client relationship." *Id.* at 25. Love also established that he was able to consult with his attorney for only a short time before entering his plea. These facts were established by affidavit from Love and from the attorney who represented him at his plea. *Id.* at 23.

By contrast, Travelstead did not attempt to withdraw his plea until seven months after he had entered his *nolo contendere* plea. Although he claims that his attorney pressured him into the plea, unlike Love, he did not support his original contention by an affidavit from his former attorney. We

approximately fourteen months between charge and trial).

note that Travelstead was represented by a different attorney than the one who represented him when he entered his plea for five months before Travelstead moved to withdraw his plea. Furthermore, at the hearing when he changed his plea to *nolo contendere* Travelstead indicated that he was satisfied with his attorney's representation.

It does not appear that Travelstead is claiming that he did not understand the offense of attempted murder. *See Bratcher v. State*, 681 P.2d 358, 361–63 (Alaska App.1984). Rather his claim seems to be that after being interviewed by Dr. Ohlson and reading his report, Travelstead decided that he could defend on the ground that he did not intend to kill Chief Walters. However, it appears that Travelstead's plea of *nolo contendere* was entered with full knowledge of the nature of the charge.[2]

The policy reason for allowing pleas of guilty or *nolo contendere* to be withdrawn more freely before sentencing than after sentencing is set forth in the *Love* case:

> This distinction rests upon practical considerations important to the proper administration of justice. Before sentencing, the inconvenience to court and prosecution resulting from a change of plea is ordinarily slight as compared with the public interest in protecting the right of the accused to trial by jury. But if a plea of guilty could be retracted with ease after sentence, the accused might be encouraged to plead guilty to test the weight of potential punishment, and withdraw the plea if the sentence were unexpectedly severe. The result would

be to undermine respect for the courts and fritter away the time and painstaking effort devoted to the sentencing process. [Footnote omitted.]

630 P.2d at 24 n. 7, (quoting *Kadwell v. United States*, 315 F.2d 667, 670 (9th Cir. 1963), *quoted in* 2 C. Wright, *Federal Practice and Procedure*, § 538 at 473 (1969)). Travelstead's attempt to withdraw his plea came after he received the lengthy sentence from Judge Buckalew. Given this fact and the amount of time which passed between Travelstead's entry of his *nolo contendere* plea and his attempt to withdraw that plea, it appears that his desire to withdraw his plea may well have been similar to that of a defendant who wishes to withdraw his plea after he receives a long sentence. *See United States v. Kay*, 537 F.2d 1077, 1078 (9th Cir.1976) (not an abuse of discretion to refuse to permit defendant to withdraw his guilty plea where defendant filed his motion after co-defendants were sentenced).

Travelstead relies on *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) in arguing that his plea of *nolo contendere* was entered without compliance with Alaska R.Crim.P. 11 because the trial court never informed him of his privilege against self-incrimination. However, in *Barrett v. State*, 544 P.2d 830 (Alaska 1975), *aff'd*, 546 P.2d 161 (Alaska 1976), the court interpreted the *Boykin* case and held that it was not necessary to inform a person entering a guilty or *nolo contendere* plea of his privilege against self-incrimination as long as it could be

---

**2.** The affidavit of Dr. Ohlson does not appear to contain any surprising or new information. Dr. Ohlson states in part:

> 3. It is my understanding that, in the course of the road-block incident, several Alaska State Troopers were firing on the vehicle in which Mr. Travelstead was riding as a passenger, and that Mr. Travelstead had been wounded in the course of this incident. It is my further understanding that while Mr. Travelstead and his wife remained in the truck after a trooper had disarmed him of a rifle, Mrs. Travelstead was laying prone on the front seat when Chief Walters suddenly entered the vehicle, jumped on top of her and

> began to struggle with Mr. Travelstead and to strike him with his police flashlight. It was at this point Mr. Travelstead fired a handgun at Chief Walters, and wounded him.
>
> 4. Based on these facts, it is my professional opinion that, Mr. Travelstead's response may well have been a reflex action to the presence and actions of Chief Walters, and not an intentional act. That if called to testify in this matter, I would so state.

The affidavit does not seem to deal with the evidence which indicates that Travelstead fired three shots toward Chief Walters with a revolver and that it was the third shot which struck Walters in the chest.

determined that the plea was voluntarily and intelligently made. 544 P.2d at 833–34. Travelstead has not pointed out any defects in the plea proceedings, and it appears to us that his plea was properly entered in compliance with Criminal Rule 11. We hold that the trial court did not abuse its discretion in refusing to allow Travelstead to withdraw his plea.

### SENTENCE

Attempted first-degree murder is a class A felony, and the maximum penalty is twenty years. Travelstead concedes that he had been formerly convicted of a felony, burglary, and was therefore subject to a ten-year presumptive term. Judge Van Hoomissen found that the state established two aggravating factors by clear and convincing evidence: (1) that the conduct constituting the offense was among the most serious conduct included in the definition of the offense (AS 12.55.155(c)(10)) and (2) that Travelstead's conduct was knowingly directed at a law enforcement officer during the exercise of the officer's official duties (AS 12.55.155(c)(13). The trial court found that these aggravating factors and the fact that Travelstead was a worst offender justified giving a sentence greater than the presumptive term. Judge Van Hoomissen sentenced Travelstead to twenty years with five years suspended and made that sentence consecutive to the sentence imposed by Judge Buckalew.

Travelstead first points out that a mitigating factor applied to his case, that his prior conviction was of a less serious class of offense than his attempted murder conviction. Former AS 12.55.155(d)(8). When this mitigating factor was brought to Judge Van Hoomissen's attention, he stated that this mitigating factor had been repealed. However, the effective date for repeal of the mitigating factor was not until October 1, 1982, shortly after Travelstead's offense. Under these circumstances we believe that the mitigating factor did apply to Travelstead's offense. However, from the nature of Travelstead's offense, his prior record and Judge Van Hoomis-

sen's sentencing remarks, we think that it is unlikely that Judge Van Hoomissen's sentence would be different because of the existence of this mitigating factor. We will therefore review the sentence at this point. Travelstead is free to apply for a reduction of sentence under Alaska R.Crim.P. 35 and point out to Judge Van Hoomissen that he is entitled to have the mitigating factor considered.

■ Travelstead argues that his sentence is excessive. At the time of these offenses Travelstead was twenty-seven years old. He was institutionalized for various offenses as a juvenile and has a prior felony conviction for burglary in Illinois. His probation was revoked twice on that offense. He has also been convicted for aggravated assault, petty larceny, passing a worthless check, assault, and escape. On top of these offenses Travelstead committed the series of burglaries and robberies and the kidnapping which led to the sentences by Judge Buckalew. Travelstead has been diagnosed as an antisocial personality, and this diagnosis plus his numerous offenses support Judge Van Hoomissen's conclusion that Travelstead was a particularly dangerous offender.

The facts of Travelstead's current offenses are particularly serious. It appears probable that Chief Walters would have died from the shot to the chest except for the fact that he was wearing a protective vest. This shot was the third shot which Travelstead fired at Chief Walters. We conclude that the sentence which Judge Van Hoomissen imposed was not clearly mistaken and that the record supports the imposition of consecutive sentences. See *Neal v. State*, 628 P.2d 19, 21 (Alaska 1981).

AFFIRMED.