**Robert M. PERRY, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–5453.

Court of Appeals of Alaska.

Dec. 6, 1996.

Michael R. Smith, Law Office of Michael R. Smith, Anchorage, for Appellant.

John A. Scukanec, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

*OPINION*

COATS, Judge.

Robert M. Perry was indicted on two counts of first-degree assault and one count of attempted murder in connection with an altercation that occurred aboard a fishing vessel while the vessel was docked in Dutch Harbor. Shortly before trial was set to begin, Perry entered a no contest plea, pursuant to a plea agreement with the state, to one count of first-degree assault before Judge Donald D. Hopwood. The agreement limited Perry's sentence to a term of imprisonment not to exceed fifteen (15) years and stipulated to the existence of a mitigating factor.

Within hours of his change of plea, Perry regretted his decision to change his plea; two business days later, he filed a motion to withdraw his plea. Judge Hopwood denied Perry's motion to withdraw his plea and subsequently sentenced Perry to fifteen years of imprisonment. Perry now appeals the denial of his motion to withdraw his plea. We reverse.

In *Monroe v. State,* 752 P.2d 1017, 1019 (Alaska App.1988), we stated:

> In seeking to withdraw a plea, the burden is on the defendant to establish a "fair and just" reason for withdrawal. *Wahl v. State,* 691 P.2d 1048, 1051 (Alaska App. 1984). The decision of whether to grant the withdrawal is within the trial court's discretion, but presentence requests for withdrawal should be liberally granted. *Id.; Travelstead v. State,* 689 P.2d 494, 497 (Alaska App.1984). The trial court's ruling will only be reversed when the court abuses its discretion. *Ningealook v. State,* 691 P.2d 1053, 1055–56 (Alaska App.1984).

> The trial court must consider the totality of the circumstances surrounding the defendant's request. "The defendant's reason for seeking withdrawal must be evaluated against the delay preceding the request, the extent of prejudice to the prosecution, and the likelihood that the defendant is attempting to manipulate the system to obtain an unfair advantage." *McClain v. State,* 742 P.2d 269 (Alaska App.1987) (citing *Wahl,* 691 P.2d at 1051). Although presentence requests· to withdraw a plea should be liberally granted, the defendant must nevertheless present a fair and just reason for withdrawal. The court may deny a request for withdrawal in the absence of such a reason even if the state would not suffer prejudice if the case went to trial. *McClain,* 742 P.2d at 271–72.

Trial in this case was originally set to begin in Unalaska in August of 1993, but after several continuances was set for November 1, 1993. On Thursday, October 28, 1993, Judge Hopwood conducted an evidentiary hearing in Unalaska on a defense motion to suppress. The judge, prosecutor, defense counsel, and Perry were all present in the courtroom at this time. Following the hearing, defense counsel announced that he was ready for trial and left the courtroom to take a plane to Anchorage. Perry then filed a *pro se* motion to discharge his counsel, alleging ineffective assistance of counsel and alleging that defense counsel was unprepared to go to trial. He requested a thirty-day continuance to allow new counsel to prepare for trial. On Friday, October 29, 1993, Judge Hopwood denied the defense motion to suppress on the record. Judge Hopwood, the prosecutor, and Perry were present in the Unalaska courtroom; defense counsel participated telephonically from Anchorage. After denying the motion to suppress, Judge Hopwood took up Perry's motion to dismiss counsel and to continue the trial. The state opposed the motion. The prosecutor told the court that the state was flying in several witnesses from Washington and California over the weekend and had invested substantial time, money, and effort in making the arrangements for those witnesses. The prosecutor pointed out that most of the witnesses were fishermen who would be leaving in early December to go to sea to fish, and that the state would have difficulty assuring their attendance during the fishing season. Judge Hopwood conducted an *ex parte* hearing with Perry and defense counsel to determine the merits of the motion to dismiss counsel. Ultimately, Judge Hopwood denied this motion and ordered that Perry's counsel would continue to represent him and that trial would proceed as scheduled on November 1.

On the evening of October 29, 1993, Perry called his attorney in Anchorage and asked him to speak to the state about a possible plea agreement. Defense counsel did so, and worked out a tentative agreement with the state. On Saturday, October 30, 1993, at 12:30 p.m., the court held a hearing in the Unalaska courtroom for Perry's change of plea. Judge Hopwood presided telephonically from Kodiak and Perry's defense counsel appeared telephonically from Anchorage. Perry sat alone at the defense table in the Unalaska courtroom. Also in the courtroom were the prosecutor, the Unalaska magistrate, and three corrections officers.

At the beginning of the hearing, defense counsel asked Judge Hopwood to determine if Perry was actually interested in entering a plea. Following inquiry by the court, Perry stated that he "was considering accepting a deal." For two and one-quarter hours the parties discussed taking Perry's plea. During this time, Perry appeared hesitant about entering his plea, and raised several questions. Judge Hopwood allowed Perry to talk privately with his attorney several times on the telephone to work out questions about the plea agreement. At one point, the court asked how Perry was feeling. Perry replied that he was not feeling well, and that he was under a lot of stress in deciding what to do about the plea. However, he did say that he understood what was going on. Perry also stated that he was a long-term smoker and had not been able to smoke at the jail, which had a no smoking policy.[1] In response to Judge Hopwood's question, Perry indicated that he was not entering the plea so he could smoke, but that he was really nervous and going through withdrawal at the time. At one point during the proceedings, Perry indicated that he wanted to talk with his wife about whether he should enter a plea. Judge Hopwood allowed Perry to attempt to telephone his wife, but told him that he had at most five minutes. Perry was unable to contact his wife. Perry again indicated that he needed to talk to his attorney. Judge Hopwood said that he would allow Perry to talk with his attorney, but for five minutes only. After talking to his attorney for a few minutes, Perry entered his no contest plea. Judge Hopwood accepted the plea and adjourned at 2:44 p.m., approximately two and one-quarter hours after the hearing began.

Shortly after 10:00 p.m. that same evening, Perry notified a guard at the Unalaska jail that he wanted to withdraw his plea. Perry asked the guard to call his attorney and the assistant district attorney. The guard was unable to reach Perry's attorney but did manage to notify the district attorney's office. Perry was finally able to contact his attorney on Sunday, October 31 with his request to withdraw his plea. The attorney filed a motion on November 2.

Following a hearing, Judge Hopwood denied the motion. In denying the motion, Judge Hopwood found that Perry had been able to adequately consult with his attorney and had not been prejudiced by the fact that he had to talk to his attorney by telephone. He noted that Perry had been able to consult with his attorney several times during the change of plea hearing. He concluded that Perry acted only under the ordinary pressure that anyone would have faced who was entering a plea to a serious felony charge shortly before a scheduled trial. He concluded that Perry was trying to manipulate the system by delaying the resolution of his case. He further found that the state was prejudiced by the entry of the plea. He noted that the state's witnesses were fishermen who all resided outside of Unalaska, a remote town on the Aleutian Chain. He pointed out that it was extremely difficult to get witnesses and court personnel in and out of Unalaska. He also found that it was very difficult and disruptive to try to schedule witnesses who are fishermen, because they are unavailable during the fishing season. He pointed out that Perry had at least eight prior felony convictions and therefore had considerable experience in entering pleas, and was able to manipulate the system. He also found that it would be difficult to reschedule Perry's case in a crowded court calendar now that it had been removed.

The record sets out several matters which should have alerted the trial court to be extremely cautious in accepting Perry's plea. Perry was having problems with his attorney and had moved to get another attorney. He apparently believed that his attorney was not prepared for trial. On the eve of the trial, Perry asked his attorney to negotiate a plea bargain with the state. At the beginning of the hearing to enter his plea, it was obvious from Perry's responses that he was not sure whether he wanted to enter a plea and that he had not fully discussed the matter with his attorney. Commendably, Judge Hopwood gave Perry several opportunities to talk to his attorney. However, Perry had to talk to his attorney over the telephone and was obviously under considerable time pres-

---

1. Apparently, Perry was allowed to smoke a cigarette before the hearing began.

sure when he was talking to his attorney. Perry stated that he was not feeling well at the change of plea hearing, not only because of the anxiety of entering a plea to a serious charge, but because, as a long-term smoker, he was undergoing withdrawal due to his inability to smoke cigarettes. Perry attempted to contact his wife to discuss entering the plea, but was unable to contact her. The record shows that Perry was skeptical and uncertain about entering a plea until near the conclusion of the hearing. At that time, under considerable time pressure, Perry did enter his plea. However, given this background, what happened next was highly predictable. Only a few hours after entering his plea, Perry told the officials in the jail that he wanted to withdraw his plea.

In denying Perry's motion to withdraw his plea, Judge Hopwood found Perry was attempting to manipulate the system by having his trial canceled. We do not believe that this assessment is realistic. Perry contacted the jail officials only a few hours after entering his plea. This was on Saturday evening; trial was not set until Monday morning. At the time Perry contacted the jail officials he must have known that, given this quick notice, the state might be able to reestablish the witnesses' travel plans and proceed to trial either as scheduled or with a slight delay.

Furthermore, although Judge Hopwood found that the state would be prejudiced by allowing Perry to withdraw his plea, we do not believe that the prejudice was sufficiently substantial to justify depriving Perry of his right to a trial. We recognize that it is extremely difficult to get court personnel and witnesses to an outlying area such as Unalaska. Although this might be entitled to some weight, we do not believe that it should be given significant weight. The difficulty of servicing outlying areas is inherent in providing judicial services to those areas. It is routinely difficult to get court personnel and witnesses to those areas. Therefore, the problems which Judge Hopwood noted in this case are far from extraordinary. The fact that the witnesses in this case were fishermen who were about to start a long fishing season does not appear to be critical. Many

people have seasonal employment which would interfere with their ability to attend a trial in Unalaska. The record shows that fishing season started some time in December and ran until spring. Apparently it would be difficult to schedule these witnesses during that period. However, the record does not demonstrate that the state could not have rescheduled a trial before the fishing season started. We recognize that the court found that the Unalaska court calendar was crowded and that it would be difficult to reschedule the case. However, although we recognize this difficulty, we do not see it as determinative. Working with crowded court calendars is a challenge which the courts in this state routinely face. We do not believe that this entitles the court system to deprive Perry of his right to a trial. Furthermore, there is no showing that the trial could not have been rescheduled for spring at the conclusion of fishing season. In the event that a trial in the spring was the most realistic alternative, it would be reasonable to charge Perry with this delay under the speedy trial rule, Criminal Rule 45. We accordingly conclude that Judge Hopwood erred in finding that the state established sufficient prejudice to prevent Perry from withdrawing his plea.

We do not arrive at this decision easily. We recognize that many pleas are entered shortly before trial and that the defendants who enter these pleas are making difficult decisions under significant pressure. We recognize that many defendants will reconsider after entering a plea at the last minute. If courts allow routine withdrawal of these pleas it could allow defendants to manipulate the system and would be very disruptive. *See McClain v. State,* 742 P.2d 269, 271 (Alaska App.1987); *Ningealook v. State,* 691 P.2d 1053, 1055–56 (Alaska App.1984). Therefore, in general, while stating that "presentence requests to withdraw a plea should be liberally granted," *Monroe v. State,* 752 P.2d 1017, 1019 (Alaska App.1988); *McClain,* 742 P.2d at 271; *see also Love v. State,* 630 P.2d 21, 24–25 (Alaska App.1981), we have upheld trial courts which have refused to allow defendants to withdraw pleas unless we found that the defendant had established a substantial reason for withdrawing the plea. *See, e.g., Wiley v. State,* 822

P.2d 940 (Alaska App.1991); *Ortberg v. State,* 751 P.2d 1368 (Alaska App.1988); *Shetters v. State,* 751 P.2d 31 (Alaska App.1988). However, in Perry's case, we conclude that the totality of the circumstances demonstrates that he should have been allowed to withdraw his plea. As we have stated, there were many reasons why Perry's entry of plea was problematic. Furthermore, almost immediately after entering the plea, Perry contacted jail officials to attempt to withdraw his plea. Although the state did show that it would undergo substantial inconvenience, we do not believe that the inconvenience rose to a level of sufficient prejudice which would justify a decision to deprive Perry of his right to a trial. We accordingly conclude that Judge Hopwood erred in refusing to allow Perry to withdraw his plea.[2]

REVERSED.

MANNHEIMER, Judge, concurring.

I am writing separately to clarify which facets of this case lead me to conclude that Perry should have been allowed to withdraw his plea.

For present purposes, the story of Perry's plea and his later attempt to withdraw it begins two days before the plea, on Thursday, October 28, 1993. On that day, Judge Hopwood held a hearing in Unalaska on a defense motion to suppress certain evidence. At the close of the suppression hearing, after Perry's attorney had left the courtroom to board a plane back to Anchorage, Perry told Judge Hopwood that he believed his attorney was not prepared for trial (which was set for the next Monday). Perry asked Judge Hopwood to discharge his attorney, appoint him a new one, and continue the trial for 30 days to allow the new attorney to prepare. Judge Hopwood took no action on Perry's request at that time.

The next day (Friday, October 29), Judge Hopwood convened the parties to announce his decision on the suppression motion. (Perry's attorney was in Anchorage, participating by telephone.) After announcing that he was denying the suppression motion,

---

**2.** Perry also objects on appeal to the telephonic nature of the change of plea hearing, claiming that his right to be present under Criminal Rule 38(a) was violated. Criminal Rule 38(a) lists criminal proceedings at which the defendant has a right to be present:

> The defendant shall be present at the arraignment, at the preliminary hearing, *at the time of plea,* at the omnibus hearing, and at every stage of the trial, including the impaneling of the jury and return of the verdict, and at the imposition of sentence, except as otherwise provided in this rule.

Alaska R.Crim. P. 38(a) (emphasis added). Criminal Rule 38.1, however, allows these stages of the criminal proceeding to be conducted telephonically under certain circumstances:

> In any proceeding at which the defendant's presence is required under Criminal Rule 38(a), as modified by Rule 38.2, the defendant may waive the right to be present and request to participate by telephone. The defendant's waiver of the right to be physically present may be obtained orally on the record or in writing. The court may allow telephonic participation of one or more parties, counsel or the judge at any proceeding in its discretion. The court may allow telephonic participation of witnesses at bail hearings, omnibus hearings, probation revocation hearings or at trial with the consent of the prosecution and the defendant. The court may allow telephonic participation of witnesses at other hearings in its discretion.

Alaska R.Crim. P. 38.1(a). Perry contends that the court was required to obtain his waiver of the right to be physically present either orally on the record or in writing. However, Perry was physically present in the courtroom; it was his attorney and the judge who appeared telephonically, a procedure allowed in the court's discretion. Perry also relies on this court's decision in *Henry v. State,* 861 P.2d 582 (Alaska App.1993), in which we found that the trial court had abused its discretion by presiding telephonically, over the defendant's objection, at a sentencing hearing during which the defendant exercised his right of allocution. Perry's case is at least partially distinguishable from that in *Henry* because he did not object to the telephonic appearance of his attorney and Judge Hopwood. At the hearing on the motion to withdraw plea, Judge Hopwood determined that Perry had waived any objection to the telephonic hearing by requesting the hearing on short notice, knowing that his attorney and the judge were not in Unalaska.

We need not resolve this issue, given our decision to reverse on other grounds. Whether or not Perry waived any right he might have had to object to counsel's and Judge Hopwood's telephonic appearance, in reaching our decision we considered the difficult circumstances, particularly Perry's difficulty in communicating with counsel who was not in the courtroom with him, in concluding that Perry should be allowed to withdraw his plea.

Judge Hopwood took up Perry's motion to dismiss counsel and to continue the trial.

After hearing the State's position [1], Judge Hopwood allowed Perry to air his complaints about his attorney in an *ex parte* hearing. Ultimately, Judge Hopwood denied Perry's motion and ordered Perry's attorney to continue to represent him. Judge Hopwood announced that Perry's trial would proceed as scheduled the following Monday, November 1.

That evening (Friday, October 29), Perry called his attorney in Anchorage and asked him to speak to the State about a possible plea agreement. Pursuant to this request, Perry's attorney worked out a tentative agreement with the State. On Saturday, October 30 at 12:30 p.m., Judge Hopwood convened a hearing to accept Perry's change of plea. Judge Hopwood presided telephonically (having returned to Kodiak for the weekend), and Perry's counsel participated telephonically from Anchorage. The prosecutor and Perry were in the Unalaska courtroom, accompanied by the Unalaska magistrate and three corrections officers.

Apparently, Perry's attorney had calendared the hearing even though he was not certain if Perry was going to accept the newly negotiated plea bargain: at the beginning of the hearing, Perry's attorney asked Judge Hopwood to determine if Perry was actually interested in changing his plea. When Judge Hopwood made this inquiry, Perry stated that he "was considering accepting a deal".

For the next two and a quarter hours, the judge, the attorneys, and Perry discussed whether Perry would change his plea. Perry repeatedly expressed hesitancy about pleading no contest to first-degree assault, and he raised several questions about the consequences of such a decision. Several times, Judge Hopwood allowed Perry to interrupt the proceedings to consult privately with his attorney. However, as the afternoon wore on, Judge Hopwood expressed increasing im-

patience with the fact that court had been convened to accept a change of plea even when Perry's acceptance of the plea agreement remained unsettled.

At one point during the discussions, Perry told Judge Hopwood that he wished to consult his wife about whether he should change his plea. Judge Hopwood recessed the proceedings to allow Perry to try to telephone his wife, but he told Perry that the recess would last no more than five minutes. Perry tried to contact his wife but was unable to do so within the allotted five minutes. The hearing moved on.

In addition to his misgivings about the consequences of the plea, Perry also told Judge Hopwood that he was a long-term smoker and that, because the jail had a no-smoking policy, he was going through nicotine withdrawal at the hearing. (Perry had been allowed a cigarette before the hearing began, but the hearing was now stretching toward two hours' duration.)

Toward the end of the hearing, Perry again indicated that he needed to talk privately with his attorney. Judge Hopwood told Perry that the conversation could last no more than five minutes. After talking to his attorney for a few minutes, Perry finally entered his no contest plea. Judge Hopwood accepted the plea and adjourned the court. The time was 2:45 p.m.

Shortly after 10:00 p.m. that evening, Perry notified a guard at the Unalaska jail that he wanted to withdraw his plea. Perry asked the guard to call his attorney and the assistant district attorney. The guard was unable to reach Perry's attorney but did manage to notify the district attorney's office. Perry was finally able to contact his attorney on Sunday, October 31 with his request to withdraw his plea. The attorney filed a motion to withdraw Perry's plea on Tuesday, November 2.

Following a hearing, Judge Hopwood denied this motion. Judge Hopwood found that

---

**1.** The State opposed a continuance. Several of the State's witnesses were fishermen who were flying to Unalaska from Washington and California over the weekend to attend the trial. The prosecutor told the court that most of these fish- ermen would be going to sea in early December to fish; if Perry's trial were continued for 30 days, the State would have a difficult time obtaining the fishermen's attendance.

Perry had been able to adequately consult with his attorney, and that Perry faced only the ordinary pressure that anyone would face who was entering a plea to a serious felony charge shortly before a scheduled trial. Judge Hopwood concluded that Perry was only trying to manipulate the system by delaying the resolution of his case. The judge further found that the state would be prejudiced if Perry were allowed to withdraw his plea (because of the witness difficulties described above).

Although a trial judge has considerable discretion in deciding whether to allow a plea withdrawal, I conclude that Perry should have been allowed to withdraw his plea. The record in this case reveals several matters that should have alerted Judge Hopwood to be extremely cautious in accepting Perry's plea.

First, Perry was clearly having problems with his attorney; the day before he entered his plea, Perry had asked the court to remove his attorney and appoint him a new one. Perry apparently believed that his attorney was not prepared for trial.

Shortly after his request for a new attorney was denied, Perry asked his attorney to see about a plea bargain. This chain of events should have put the court on guard to the possibility that Perry was seeking a plea agreement only because he considered a negotiated settlement preferable to going to trial with an attorney who (he believed) was unprepared to adequately represent him.

When Judge Hopwood convened the change of plea hearing on Saturday afternoon, it was obvious from the defense attorney's statements and Perry's responses that neither Perry nor his attorney was quite sure whether Perry wanted to change his plea. Clearly, this was a matter that had not been fully discussed between attorney and client. Commendably, Judge Hopwood gave Perry several opportunities to talk with his attorney. However, Perry had to talk with his attorney by telephone. Moreover, as the hearing stretched to over two hours, Judge Hopwood began to apply pressure to Perry to limit his discussions with his attorney.

Perry told Judge Hopwood that he was not feeling well—that he was suffering from nicotine withdrawal. However, rather than recessing the hearing to allow Perry to smoke, Judge Hopwood pressed on. Perry expressed the desire to consult his wife about the plea bargain, but Judge Hopwood gave Perry only five minutes to try to contact his wife, and Perry was unable to contact her.

In sum, the record shows that Perry repeatedly expressed skepticism and uncertainty about changing his plea until the very conclusion of the hearing. He was placed under psychological, physiological, and time pressure to make a decision. His ability to consult with his attorney and his spouse was limited. Given these circumstances, what happened next was not surprising: a few hours after changing his plea, Perry told the officials at the jail that he wanted to withdraw the plea.

In denying Perry's motion to withdraw his plea, Judge Hopwood found that Perry was attempting to manipulate the system by having his trial cancelled. I find this conclusion dubious. Perry contacted the jail officials only a few hours after entering his plea. This was on Saturday evening; trial was not set until Monday morning. When Perry asked the jail officials to contact the attorneys, he must have known that there was a good chance the State either had not yet called off its witnesses or would be able to reestablish the witnesses' travel plans and proceed to trial, either on Monday as scheduled or with only a slight delay.

Judge Hopwood also found that the State would be prejudiced by allowing Perry to withdraw his plea. However, this prejudice stemmed primarily from the fact that many of the State's witnesses might not be available again until the spring. Given the facts of this case, I do not believe that this anticipated delay justified depriving Perry of his right to a trial. I recognize that it is sometimes extremely difficult to get court personnel and witnesses to an outlying area such as Unalaska. Judge Hopwood could properly take this into account. However, under the facts of this case, I do not think that this factor was entitled to determinative weight.

The record in this case reveals that Perry was pressured into making his decision, not just by the circumstances that normally confront a defendant whose trial is fast approaching, but also by his attorney and, to a certain extent, by the court. Perry's attorney calendared the change of plea hearing before he knew whether his client wished to accept the plea bargain. The attorney-client discussion of the plea bargain took place, in large measure, during the hearing itself. Perry's discussions with his attorney were hampered by the fact that the attorney was not personally present in Unalaska with Perry. Perry was told that he had only a limited time to consult his attorney about the various facets of the plea bargain. Perry was given only a limited opportunity to try to contact his wife, and during the lengthy proceedings no accommodation was made for Perry's nicotine addiction. Again and again, Perry expressed uncertainty about whether to accept the plea bargain. It appears that he ultimately changed his plea because he was worn down.

Under the totality of these circumstances, I conclude that Perry established good cause for withdrawing his plea.